CLEVELAND PRINTING INK CO.
v. PHIPPS.

Ohio Appeals, 8th Dist., Cuyahoga Co.

No. 8176. Decided March 19, 1928.

Syllabus by Editorial Staff.

313. CORPORATIONS—157. Blue Sky Law.
Directors of corporation not permitted to set up Blue Sky law after having reaped benefits of its violation for many years.

Appeal from Common Pleas.
Decree for defendant.

Squire, Sanders & Dempsey, Cleveland, for Cleveland Printing Ink Co.

Roscoe M. Ewing, Esq., Cleveland, for Phipps.

STATEMENT OF FACTS.

Baumgardner was the inventor of a certain process or formula for the making of printing ink, and Phipps was a sales agent, selling medical books, and as such, came in contact with doctors and others. He and Baumgardner were friends, and Baumgardner, stating that he had this process and would like to establish a manufacturing plant, they entered into an agreement that if a manufacturing plant was formed they would have half of the stock issued to them for the process or formula which Baumgardner had patented or copyrighted, which the record shows was worth at least $6,000. Baumgardner claims that himself, and there is no evidence to the contrary but what it was worth at least $6,000 and Baumgardner says it is worth more.

After this agreement was entered into between Phipps and Baumgardner, Phipps went out and solicited subscriptions to the stock among his friends and raised the sum of $6,000, whereupon a corporation was formed and the record shows that the first five certificates of stock were issued to directors, who successively resigned as the interested parties were elected to the board of directors in their stead. The sixth certificate of stock, which called for 600 shares, amounting to $6,000 (the corporation being a $25,000 corporation, $12,000 of which stock was to be issued) was drawn up and signed by the officers to Baumgardner. That certificate of stock was never, as a matter of fact, delivered to Baumgardner and remained intact in the book, but the next certificates, seven and eight, were 300 shares each, one certificate being issued to Baumgardner and one to Phipps, and this accounts for the whole issue of 600 shares to Baumgardner, which was in payment of his process, and by virtue of the agreement between Phipps and him, it was split up between the two, he to have three hundred shares, and in accordance with that agreement the 300 shares were delivered to Baumgardner and 300 to Phipps, and this accounts for certificate number six, it being replaced by these two certificates to Baumgardner and Phipps.

For a long period of time thereafter, Phipps voted his 300 shares and Baumgardner voted his 300 shares, but subsequently an audit of the books was made by some one who found this certificate number six in the stock book of the company, and inasmuch as it had not been endorsed by Baumgardner, he claimed that Baumgardner owned that stock, ignoring the splitting up of the same number of shares of stock between Baumgardner and Phipps that appeared on the stubs to the next two certificates. Thereafter, Baumgardner claimed to hold the 600 shares of stock and that Phipps did not have any, and upon that a suit was brought to cancel these shares of stock and the court below, as already stated, held that the certificates of shares of stock to Phipps should be canceled.

VICKERY, J.

We cannot help but come to a different

and contrary conclusion that these shares of stock were issued to Phipps in accordance with his agreement with Baumgardner and Phipps was the owner of three hundred shares and Baumgardner was the owner of three hundred shares.

It is now claimed by the board of directors that they had no right to issue these six hundred shares of stock for the formula and process for manufacturing this ink, for they had not complied with the Blue Sky Law of Ohio and that, therefore, the stock was never issued. This is a singular plea and comes rather late in the day and with very bad grace, for the resolution of the board of directors shows that this formula and process was reasonably worth $6,000, and this resolution was passed by the Board of Directors who had become all the stockholders in the corporation, and the six hundred shares of stock were issued for the process or formula which thereupon became the property of the company and was to be transferred and assigned to the company.

It is alleged and argued now that such assignment was never made. Well, if it was not made it is the fault of the directors of the corporation and they could have gone into court at any time and could come now into the court of equity and compel an assignment of this formula. The evidence, without any doubt, shows that this corporation was formed upon the distinct understanding and agreement between all the parties that $6,000 was to be raised outside, which Phipps raised, and the formula and process were to be regarded as of the value of $6,000 and Baumgardner in his testimony says it is worth that and much more.

*Now after the corporation was formed and* this formula was used by them for the entire period of time in which they ran this corporation and had the use of it and the stock had been transferred to Baumgardner and Phipps in accordance with their contract, and they had become officers of the corporation and voted this stock in the corporation, it is rather late for the directors to say that they had not complied with the law, after they had reaped the benefits of this stock. In other words, they are estopped, even if the transaction was contrary to the Blue Sky Law, which I do not concede.

The decree will be drawn for the defendant.

(Sullivan, PJ., concurs. Levine, J., not sitting.)